**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| Julia Ruth Tarbill, | Case No.: 3:25-cv-50218 |
|             Plaintiff, | |
| v. | Honorable Judge Iain D. Johnston |
| Experian Information Solutions, INC., Equifax Information Services, LLC, Trans Union LLC, Edfinancial Services, LLC, | **JURY TRIAL DEMANDED** |
|             Defendants. | |

## AMENDED COMPLAINT

Julia Ruth Tarbill ("Plaintiff" or "Ms. Tarbill") brings this action on an individual basis, against Equifax Information Services, LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), Trans Union LLC, ("Trans Union"), (collectively, "CRA Defendants") and EdFinancial Services, LLC ("EdFinancial") (collectively "Defendants") and states as follows:

## INTRODUCTION

1.      Plaintiff, an identity theft victim, brings this action against Defendants for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, et. seq.

2.      More than twenty million people, just under 10% of all adult Americans, are victims of identity theft each year.[1] Federal Law requires that each consumer reporting agency ("CRA") protect victims by taking steps to remove fraudulent information from victims' reports, to ensure that only third parties with permissible purposes see victims' reports and to implement fraud alerts and security freezes at victims' requests.  This lawsuit arises from Defendant's refusal to comply

---

[1] <u>Victims of Identity Theft, 2018</u>, 1. U.S. Dept. of Justice, Bureau of Justice Statistics.  April 2021, NCJ 256085.

with these statutory requirements and resulting failure to protect Plaintiff from identity theft and identity theft consequences.

3.     The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual American consumers. Data technology, whether it is used by businesses, banks, the Internal Revenue Service, or other institutions, allows information concerning individual consumers to flow instantaneously to requesting parties. Such timely information is intended to lead to faster and better decision-making by its recipients and, in theory, all of society should ultimately benefit from the resulting convenience and efficiency.

4.     However, unfortunately this information has also become readily available for, and subject to, mishandling and misuse. Individual consumers can and do sustain substantial damage, both economically and emotionally, whenever inaccurate or fraudulent information is disseminated and/or obtained about them. In fact, the CRA Defendants acknowledge this potential for misuse and resulting damage every time they sell their respective credit monitoring services to a consumer.

5.     The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting agencies ("CRAs").

6.     These CRAs sell information to readily paying subscribers (i.e., retailers, landlords, lenders, potential employers, and other similar interested parties), commonly called "consumer reports," concerning individuals who may be applying for retail credit, housing, employment, or a car or mortgage loan.

7.      Since 1970, when Congress enacted the Fair Credit Reporting Act, 15 U.S.C. §

1681, et seq. ("FCRA"), federal law has required CRAs to implement and utilize reasonable

procedures "to assure maximum possible accuracy" of the personal, private, and financial

information that they compile and sell about individual consumers.

8.      One of the primary purposes in requiring CRAs to assure "maximum possible

accuracy" of consumer information is to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit
> reporting. Inaccurate credit reports directly impair the efficiency of
> the banking system, and unfair credit reporting methods undermine
> the public confidence which is essential to the continued functioning
> of the banking system.

See 15 U.S.C. § 1681(a)(1).

9.      The preservation of one's good name and reputation is also at the heart of the

FCRA's purposes:

> [W]ith the trend toward computerization of billings and the
> establishment of all sorts of computerized data banks, the individual
> is in great danger of having his life and character reduced to
> impersonal "blips" and key-punch holes in a stolid and unthinking
> machine which can literally ruin his reputation without cause, and
> make him unemployable or uninsurable, as well as deny him the
> opportunity to obtain a mortgage or buy a home. We are not nearly
> as much concerned over the possible mistaken turn-down of a
> consumer for a luxury item as we are over the possible destruction
> of his good name without his knowledge and without reason.
> Shakespeare said, the loss of one's good name is beyond price and
> makes one poor indeed.

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 cong. Rec. 36570 (1970)]

(emphasis added).

10.     The FCRA also requires CRAs to conduct a reasonable reinvestigation to determine

whether information disputed by consumers is inaccurate and record the current status of the

disputed information, or delete the disputed information, before the end of the 30-day period

beginning on the date on which the CRA receives the notice of dispute from the consumer. This mandate exists to ensure that consumer disputes are handled in a timely manner and that inaccurate information contained within a consumer's credit report is corrected and/or deleted so as to not prevent said consumer from benefiting from his or her credit and obtaining new credit.

11.     In light of these important findings and purposes, Congress specifically noted "a need to insure that [CRAs] exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy." See 15 U. S.C. § 1681(a)(4).

12.     The FCRA also requires Furnishers of information, a creditor or other third party that provides information about consumer to a CRA, upon notice, to conduct a reasonable reinvestigation of all disputes with regard to the completeness or accuracy of any information it provides to the CRAs regarding a consumer and modify, delete, or permanently block any items of information found to be inaccurate, incomplete, or unverifiable after said reinvestigation is completed.

13.     Plaintiff's claims arise out of the Defendants' plainly deficient reinvestigations considering Plaintiff's dispute(s) and notice that she was a victim of identity theft.

14.     Accordingly, Plaintiff brings claims against the CRA Defendants, for failing to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports, in violation of the FCRA, 15 U.S.C. § 1681e(b), for failing to conduct a reasonable reinvestigation to determine whether information Plaintiff disputed was inaccurate and in fact, the product of identity theft, and for failing to delete the disputed information from Plaintiff's credit file, in violation of the FCRA, 15 U.S.C. § 1681i, and for failing to block the identity theft items as disputed and supported by Plaintiff in violation of the FCRA, 15 U.S.C. § 1681c-2.

15.     Further, Plaintiff also brings claims against the Furnisher, Defendant EdFinancial,

for failing to conduct a reasonable reinvestigation to determine whether information Plaintiff disputed was inaccurate and in fact, the product of identity theft, and for failing to delete the disputed information from Plaintiff's credit file, in violation of FCRA, 15 U.S.C. § 1681s-2b.

16.    As part of this action, Plaintiff seeks actual, statutory, and punitive damages, costs, and attorneys' fees from the Defendants for their willful and/or negligent violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq., as described herein.

## JURISDICTION AND VENUE

17.    This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Plaintiff alleges violations of the FCRA, a federal law. See 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

18.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because Defendants regularly transacts business within this District, are otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## PARTIES

19.    Julia Ruth Tarbill ("Plaintiff" or "Ms. Tarbill") is a natural person residing in Sterling, Illinois, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

20.    Defendant Equifax Information Services, LLC ("Equifax") is a limited liability company with a principal place of business located at 1550 Peachtree Street, N.W., Atlanta, Georgia 30309, and is authorized to do business in the State of Illinois, including within this District. Equifax can be served at its registered agent, Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, GA 30092.

21.    Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f).

Equifax is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d)) to third parties.

22.     The information that Equifax collects, maintains, and sells includes confidential details about the income, finances, credit histories, address histories, application histories, credit review histories, and employment histories of 245 million Americans.  Equifax also collects consumers' personal identifiers, such as Social Security Numbers ("SSNs"), dates of birth, telephone numbers, and addresses.

23.     Equifax collects and maintains such information about consumers, whether consumers like it or not.  Consumers do not have a choice as to whether Equifax collects and maintains information about them.  Not only that, but consumers cannot remove information that Equifax collects and maintains about them from the Equifax database.  Further, Equifax sells that information about consumers for its unilateral profit, none of which is shared with the Plaintiff, who is the subject of the very data that Equifax sold.

24.     Defendant Experian Information Solutions, Inc. ("Experian") is a corporation with a principal place of business located at 475 Anton Boulevard Costa Mesa, California, and is authorized to do business in the State of Illinois, including within this District. Experian can be served through its registered agent, C T Corporation System, at 330 North Brand Boulevard Glendale, California 91203.

25.     Defendant Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f) and is a "person" as defined by 15 U.S.C. § 1681a(b). Defendant Experian is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to

third parties.

26.     The information that Defendant Experian collects, maintains, and sells includes confidential details about the income, finances, credit histories, address histories, application histories, credit review histories, and employment histories of 245 million Americans. Defendant Experian also collects consumers' personal identifiers, such as Social Security Numbers ("SSNs"), dates of birth, telephone numbers, and addresses.

27.     Defendant Trans Union, LLC ("Trans Union") is a limited liability company with a principal place of business located at 555 West Adams Street, Chicago, Illinois 60661, and is authorized to do business in the State of Illinois, including within this District. Trans Union can be served through its registered agent, Illinois Corporation Service Company located at 801 Adlai Stevenson Drive Springfield, Illinois 62703.

28.     Defendant Trans Union is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f) and is a "person" as defined by 15 U.S.C. § 1681a(b). Defendant Trans Union is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

29.     The information that Defendant Trans Union collects, maintains, and sells includes confidential details about the income, finances, credit histories, address histories, application histories, credit review histories, and employment histories of 245 million Americans. Defendant Trans Union also collects consumers' personal identifiers, such as Social Security Numbers ("SSNs"), dates of birth, telephone numbers, and addresses.

30.     Defendant EdFinancial Services, LLC ("EdFinancial") is a student loan provider with a principal place of business located at 298 North Seven Oaks Drive, Knoxville, Tennessee

37922, and is authorized to do business in the State of Illinois, including within this District. EdFinancial can be served through its registered agent, WM Anthony Hollin, at 298 N Seven Oaks Dr, Knoxville, TN 37922.

31.     EdFinancial is a "Furnisher" as defined in 12 CFR 1022.41. EdFinancial regularly furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in a consumer report.   A data furnisher, such as EdFinancial, is an entity that reports information about consumers to consumer reporting agencies (CRAs), which may include credit bureaus, tenant screening companies, check verification services, and medical information services, etc.  Like CRAs and data users, data furnishers have legal obligations and rules that must be upheld & followed pursuant to 15 U.S.C. §1681s-2b of the FCRA.

<u>SUMMARY OF THE FAIR CREDIT REPORTING ACT</u>

32.     The FCRA governs the conduct of consumer reporting agencies to preserve the integrity of the consumer banking system and to protect the rights of consumers to fairness and accuracy in the reporting of their credit information.

33.     The FCRA was designed to protect consumers from the harmful effects of inaccurate information reported in consumer reports (commonly referred to as "credit reports"). Thus, Congress enshrined the principles of "fair and accurate credit reporting" and the "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness" in the very first provision of the FCRA. See 15 U.S.C. § 1681(a).

34.     Specifically, the statute was intended to ensure that "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information.  See

15 U.S.C. § 1681(b).

35.     Congress also recognized that CRAs such as Experian, Equifax and Trans Union "have assumed a vital role in assembling and evaluating consumer credit and other information on consumers." 15 U.S.C. § 1681(a)(3). Therefore, Congress determined that there "is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4).

36.     For that reason, Congress ensured that the FCRA also provides special protections for victims of identity theft.

37.     The first form of protection is the "block." When a consumer identifies any information in their credit file that is the product of identity theft, the CRA must block (delete) the reporting of that information within four business days, provided the consumer submits:

    a.    Appropriate proof of the identity of the consumer;
    b.    A copy of an identity theft report;
    c.    The identification of such information by the consumer; and,
    d.    A statement by the consumer that the information is not information
          relating to any transaction by the consumer.

15 U.S.C. § 1681c-2(a).15 U.S.C. § 1681c-2(a).

38.     The second form of protection the FCRA provides for identity theft victims is the "fraud alert."

39.     Specifically, upon request of the consumer, a CRA must place an "initial fraud alert" in the file of that consumer, and provide that alert along with any credit score generated in using that file, for one year beginning on the date of the request. Unless one year has passed, the CRA can only remove the alert if the consumer requests removal and the CRA receives "appropriate proof of the identity of the requester." 15 U.S.C. § 1681c-1(a)(1).

40.     The third form of protection the FCRA provides for identity theft victims is a

"security freeze," which a consumer can request from nationwide CRAs such as the CRA Defendants here.

41.    A security freeze prohibits a CRA from disclosing the contents of a consumer report that is subject to the freeze to any person requesting the consumer report.[2] 15 U.S.C. § 1681c-1(i)(1).  Stated otherwise, if a consumer's report is frozen, a CRA will not be able to sell it to creditors assessing credit applications from identity thieves using an affected consumer's identity.

42.    Once placed, a security freeze does not expire.  A CRA can remove a security freeze **only** at "the direct request of the consumer," or if it finds that the freeze "was placed due to a material misrepresentation of fact by the consumer." 15 U.S.C. § 1681c-1(i)(3)(A).  Furthermore, when a consumer requests removal, the CRA must first obtain "proper identification" from the consumer before removing the freeze."  15 U.S.C. § 1681c-1(i)(3)(C).

43.    The fourth and final form of protection the FCRA provides for identity theft victims is that even in the absence of a security freeze, a CRA may only release a consumer report to a person "which it has reason to believe...intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished..." 15 U.S.C. § 1681b(a). When a credit transaction is not initiated by the consumer, a CRA may **only** release the consumer's report with the consumer's authorization or if the user is making a firm offer of credit. 15 U.S.C. § 1681b(c).  No consumer reporting agency may furnish a consumer report to any person if it has reasonable grounds for believing that the consumer report will not be used for a permissible purpose.  15 U.S.C. § 1681e(a).

44.    To that end, the FCRA imposes the following twin duties on consumer reporting

---

[2] Certain statutorily exempt entities can still request and receive a frozen report.  See 15 U.S.C. § 1681c-1(i)(4).  But those exemptions do not apply to the matter at hand.

agencies: (i) consumer reporting agencies must devise and implement reasonable procedures to ensure the "maximum possible accuracy" of information contained in consumer reports (15 U.S.C. § 1681e(b)); and (ii) consumer reporting agencies must reinvestigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies (15 U.S.C. § 1681i).

45.     Similarly, the FCRA also imposes a duty upon the Furnishers, such as EdFinancial, to reinvestigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies. (15 U.S.C. § 1681s-2b).

46.     The FCRA provides consumers with a private right of action against consumer reporting agencies, such as the CRA Defendants, and data furnishers such as EdFinancial, that willfully or negligently fail to comply with their statutory obligations under the FCRA.

## FACTUAL ALLEGATIONS

### Identity Theft

47.     On September 21, 2024, an unauthorized individual ("Fraudster") applied for student loans with Defendant EdFinancial using Plaintiff's personal identifiers without her consent, knowledge, and authorization.

48.     The fraudulent student loan accounts reported by the CRA Defendants contain the following details (collectively, "Fraudulent Accounts"):

   a.   ED FINANCIAL/ESA (145183XXXXXXXXXXXXXXXXXXXXXXX)
        Date Opened: September 21, 2024
        Original Balance: $1,313
        Status: Open/Never late. Deferred

   b.   ED FINANCIAL/ESA (145183XXXXXXXXXXXXXXXXXXXXXXX)
        Date Opened: September 21, 2024
        Original Balance: $2,250
        Status: Open/Never late. Deferred

49.     It was not until October 15, 2024, that Plaintiff discovered the Fraudulent Accounts.

50.     This discovery occurred after Plaintiff received a notification from Capital One Credit Card regarding a change in her credit score which prompted her to review her CreditWise app, where she found the Fraudulent Accounts from Defendant EdFinancial.

51.     Plaintiff did not apply for any of the Fraudulent Accounts.

52.     Plaintiff has never borrowed funds from Defendant EdFinancial.

53.     In an attempt to dispute the Fraudulent Accounts, Plaintiff contacted Defendant EdFinancial, University of Phoenix, and the Department of Education on multiple occasions. Plaintiff's investigation into the Fraudulent Accounts revealed that the loans were taken out in her name for studies at the University of Phoenix. University of Pheonix confirmed they had no record of her enrollment.

**Plaintiff Disputes Directly with Defendant EdFinancial**

54.     On October 15, 2024, Plaintiff contacted Defendant EdFinancial via phone to dispute the Fraudulent Accounts, informing them that they were fraudulent and that she had never took out such loans.

55.     On October 21, 2024, Defendant EdFinancial issued a letter in response to Plaintiff's dispute, enclosing a Loan Discharge Application to determine the Plaintiff's eligibility for loan discharge. Plaintiff filled out the application to the best of her ability and sent it back to Defendant EdFinancial.

56.     Due to concerns regarding the potential adverse impact of the identity theft and fraudulent accounts in her consumer files, Plaintiff also filed an Identity Theft Complaint with the Illinois Attorney General-Consumer Fraud Bureau on October 25, 2024.

57.     Subsequently, on November 11, 2024, Plaintiff emailed University of Phoenix to inform them about her identity theft issue.

58.     Thereafter, on November 15, 2025, Plaintiff filed an Identity Theft Report with the Federal Trade Commission (FTC).

59.     Subsequently, on November 27, 2024, Defendant EdFinancial sent a letter to Plaintiff in response to her loan discharge request. Therein, Defendant EdFinancial informed Plaintiff that it was unable to process Plaintiff's request due to an incomplete application.

60.     The application required her to apply either as the student or a relative—roles she does not hold.

61.     Filled with concern about the status of the Fraudulent Accounts, Plaintiff contacted Defendant EdFinancial on January 14, 2025. During this call, it was discovered that Defendant EdFinancial had an incorrect phone number on file.

62.     The representative also identified three names associated with the loan: the Plaintiff's name, as well as two unfamiliar names—Jay Mark and Mark James.

63.     Additionally, another address was found on file, which allegedly belongs to Jay Mark and Mark James: 2468 Bark Doll Road, Apt. 2, Naperville, IL 0565.

64.     There were also two unrecognizable phone numbers listed in Plaintiff's credit file(s). One for Jay Mark (323-398-2110) and one for Mark James (674-202-6000).

65.     The loan was disbursed on September 21, 2024, and is currently in a grace period, with repayment set to begin on July 15, 2025.

66.     The stark discrepancies revealed by Defendant EdFinancial, including unfamiliar names and an unknown address, left Plaintiff in a state of profound confusion. Plaintiff has never heard of either Jay Mark or Mark James and has no connection to anyone residing at the listed address.

**Plaintiff Obtains Her Credit Reports and Confirms the Reporting of the Fraudulent Accounts in Her Consumer Files**

67.     On or about January 3, 2025, Plaintiff obtained copies of her credit reports from the CRA Defendants and, upon review, saw that the Fraudulent Accounts were being reported therein.

**Plaintiff's Dispute to the CRA Defendants January 2025**

68.     Concerned that Defendant EdFinancial would continue to report inaccurately to one or more of the CRA Defendants that Plaintiff was responsible for the Fraudulent Accounts, Plaintiff determined that she needed to escalate the issue to prevent further damage to her credit files and reports.

69.     On or about January 24, 2025, Plaintiff disputed the Fraudulent Accounts with the CRA Defendants. Specifically, Plaintiff disputed that the Fraudulent Accounts were not hers, but rather the product of fraud and identity theft.

70.     Plaintiff provided sufficient information to identify her credit file and sufficient information to support her dispute.

71.     Plaintiff requested that the identity theft information be blocked from her credit file.

72.     The credit industry has constructed a method of numeric-alpha codes for considering consumer credit report disputes. See 15 U.S.C. § 1681i(a)(5)(D).

**The Credit Bureau Defendant' Method for Considering Consumer Credit Report Disputes**

73.     The credit bureaus, Equifax, Experian, Trans Union, and Innovis, have thus created the Online Solution for Complete and Accurate Reporting, or e-OSCAR, as the credit industries' standard of performance.  e-OSCAR allows the credit bureaus to create and data furnishers to respond to disputes initiated by consumers by routing credit reporting agency-created prompts for automated consumer dispute verifications to the appropriate data furnishers. e-OSCAR utilizes a numeric-alpha language specific to the credit reporting industry.

74.     That lexicon or unique language is commonly referred to in the credit reporting

industry as "Metro II."

75. It is also known industry wide as the CDIA's "Credit Reporting Resource Guide."

76. Metro II is driven by numeric codes that translate into specific alpha representations about consumers' creditworthiness and character that will ultimately appear on credit reports issued to third parties who make credit, insurance, rental, and employment decisions regarding consumers.

77. Metro II codes are used on an industry wide form known within the credit industry as an Automated Consumer Dispute Verification ("ACDV") electronic form.

78. The ACDVs have many fields in their body for use in effecting thorough and complete communications between data furnishers and the credit reporting agencies.

79. These ACDV "fields" have various titles for the many substantive areas into which the Metro II codes can be entered.

80. Upon receiving a dispute from a consumer, the credit bureaus have an automated system that prepares ACDVs that are sent to each of the data furnishers that are reporting the credit accounts disputed by a consumer.

81. The data furnishers, like Defendant EdFinancial , then have an obligation under the FCRA to conduct a reasonable reinvestigation with respect to the disputed credit account and review all relevant information provided by the consumer with the dispute to determine whether the disputed credit account information is accurate and/or belongs to the disputing consumer. See 15 U.S.C. § 1681s-2(b).

82. Once the data furnisher completes its reinvestigation, it will code the ACDV accordingly, representing either that the disputed account was verified as accurate and belonging to the disputing consumer, updating information related to the account, or deleting the account

entirely, and return the ACDV to the respective credit bureau(s) via e-OSCAR.

**Defendant Equifax's Unreasonable Dispute Reinvestigation**

83.     On or about February 3, 2025, Equifax responded to Plaintiff's dispute, stating it would contact the Furnisher of the disputed information to verify its accuracy on her behalf.

84.     Equifax sent Defendant EdFinancial an automated credit dispute verification ("ACDV") pursuant to Plaintiff's January 24, 2025, dispute to Defendant Equifax.

85.     Upon information and beilef, Defendant EdFinancial received Equifax's ACDV and did not adequately reinvestigate Plaintiff's dispute.

86.     On or about February 17, 2025, Equifax issued dispute results to Plaintiff wherein it communicated that the disputed information was verified as accurate.

87.     Equifax failed to adequately review all of the information provided to it by Plaintiff.

88.     Upon information and belief, Equifax merely parroted the information it received from Defendant EdFinancial in response to Plaintiff's dispute.

89.     Equifax failed to reinvestigate Plaintiff's January 24, 2025, dispute and failed to block the identity theft information.

90.     Defendant Equifax violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed charges were the product of identity theft.

91.     Defendant Equifax failed to block the disputed Fraudulent Accounts after it received Plaintiff's January 23, 2025, dispute in violation of the FCRA, 15 U.S.C. § 1681c-2.

**Defendant Trans Union's Unreasonable Dispute Reinvestigation**

92.     Upon information and belief, Trans Union failed to send Defendant EdFinancial an automated credit dispute verification ("ACDV") pursuant to Plaintiff's January 24, 2025, dispute

to Trans Union.

93.     On or about January 30, 2025, less than one week after Plaintiff's dispute, Trans Union issued dispute results to Plaintiff wherein it confirmed receipt of a request containing Plaintiff's information, but erroneously determined it was not sent by Plaintiff or a properly authorized third party.

94.     Upon information and belief, Trans Union had not taken any action to investigate Plaintiff's January 24, 2025, dispute.

95.     Trans Union failed to adequately review all of the information provided to it by Plaintiff.

96.     Trans Union failed to reinvestigate Plaintiff's January 24, 2025, dispute and failed to block the identity theft information.

97.     Defendant Trans Union violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed charges were the product of identity theft.

98.     Defendant Trans Union failed to block the disputed Fraudulent Accounts after it received Plaintiff's January 23, 2025, dispute in violation of the FCRA, 15 U.S.C. § 1681c-2.

**Defendant Experian's Unreasonable Dispute Reinvestigation**

99.     Upon information and belief, Experian failed to send Defendant EdFinancial an automated credit dispute verification ("ACDV") pursuant to Plaintiff's January 24, 2025, dispute to Experian.

100.    On or about February 11, 2025, Experian issued a letter to Plaintiff wherein it confirmed receipt of a request containing Plaintiff's information, but erroneously determined it

was not sent by Plaintiff or a properly authorized third party.

101.    Upon information and belief, Experian had not taken any action to investigate Plaintiff's January 24, 2025, dispute.

102.    Experian failed to adequately review all of the information provided to it by Plaintiff.

103.    Experian failed to reinvestigate Plaintiff's January 24, 2025, dispute and failed to block the identity theft information.

104.    Defendant Experian violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed charges were the product of identity theft.

105.    Defendant Experian failed to block the disputed Fraudulent Accounts after it received Plaintiff's January 23, 2025, dispute in violation of the FCRA, 15 U.S.C. § 1681c-2.

**Defendant EdFinancial's Unreasonable Dispute Investigation**

106.    Upon information and belief, Defendant EdFinancial failed to adequately review all of the information provided to it by Plaintiff.

107.    Upon information and belief, Defendant EdFinancial verified the disputed information as accurate in response to Defendant Equifax's ACDV.

**108.**    Defendant EdFinancial violated 15 U.S.C. § 1681s-2b by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed Fraudulent Accounts were the product of identity theft.

**PLAINTIFF'S DAMAGES**

109.    Plaintiff did exactly what she should have done upon realizing she was the victim

of identity theft.

110.    Plaintiff disputed with Defendant EdFinancial and explained that the Fraudulent Accounts were fraudulently opened and that she was the victim of identity theft.

111.    Plaintiff filed an ID Theft Complaint with the Consumer Fraud Bureau.

112.    Plaintiff filed an FTC ID Theft Report.

113.    Plaintiff disputed with the CRA Defendants and included sufficient supportive documentation in support of her dispute.

114.    Plaintiff immediately identified herself as an identity theft victim and requested that the CRA Defendants block the disputed information which was the product of identity theft.

115.    The CRA Defendants failed to block the Fraudulent Accounts that were the product of identity theft despite Plaintiff's dispute.

116.    Instead, the Defendants disregarded Plaintiff's credible disputes.

117.    The Defendants understand it is frequently the case that an identity thief's activities, often designed intentionally to fabricate information into a credit file, will cause false information to appear on an identity theft victim's credit file.

118.    Despite Plaintiff's dispute to the Defendants that the EdFinancial student loans were the product of fraud, and that she was a victim of identity theft, each of the CRA Defendants hardly waivered in their refusals to block the information. Furthermore, Defendant EdFinancial refused to cease reporting the Fraudulent Accounts to the CRA Defendants.

119.    Plaintiff reasonably believes that Defendant EdFinancial verified the Fraudulent Accounts as accurate to Defendant Equifax, inaccurately suggesting that Plaintiff was responsible for the Fraudulent Accounts.

120.    As a direct result of Defendant Equifax's ardent refusal to block the Fraudulent

Accounts, which were a product of identity theft, Defendant Equifax continued to saddle Plaintiff with student loan accounts that were the product of identity theft.

121.    As a direct result of Defendant Experian's ardent refusal to block the Fraudulent Accounts, which were a product of identity theft, Defendant Experian continued to saddle Plaintiff with student loan accounts that were the product of identity theft.

122.    As a direct result of Defendant Trans Union's ardent refusal to block the Fraudulent Accounts, which were a product of identity theft, Defendant Trans Union continued to saddle Plaintiff with student loan accounts that were the product of identity theft.

123.    Further, as a direct result of Defendant EdFinancial's verification of the disputed Fraudulent Accounts to Defendant Equifax, Defendant EdFinancial continued to saddle Plaintiff with student loan accounts which are the product of identity theft.

124.    Due to Defendants' ardent refusal to comply with their respective obligations pursuant to the FCRA, Plaintiff was forced to obtain legal advice and counsel, for which she incurred attorney's fees.

125.    Further, and due to Defendants' inexplicable refusal to block the Fraudulent Accounts from an identity theft victim's consumer file, Plaintiff expended countless hours disputing the same with Defendants to no avail.

126.    As a direct result of the fraudulent accounts reported by Defendants, Plaintiff has refrained from applying for any credit, fearing further damage to her creditworthiness.

127.    The fraudulent accounts have also increased Plaintiff's overall debt-to-income ratio, materially limiting both the amount and the terms of new credit she otherwise would qualify

for.[3]

128.    Plaintiff now fears that she will be audited by the IRS for not reporting the fraudulent student loan accounts in her tax filings which may result in penalties, fines, and further financial complications.

129.    Furthermore, Plaintiff suffers from Polymyalgia rheumatica (PMR) and fibromyalgia, conditions whose pain, stiffness, fatigue, and episodic nausea intensify under stress. Defendants' continued misreporting has triggered sustained flare-ups, forcing Plaintiff to take ondansetron and her prescribed anxiety medication more frequently, and to rely on over-the-counter remedies such as Nexium and Tums, resulting in additional recurring out-of-pocket expenses each month.[4]

130.    As a result, Plaintiff lives in near-constant discomfort and is effectively house-bound: she does not leave her home unless absolutely necessary and has abandoned all planned home-improvement projects with her husband because even light activity triggers debilitating pain. This enforced inactivity fuels ongoing helplessness, frustration, and depression.

131.    Defendants' conduct has caused Plaintiff extreme emotional distress, manifested in sleepless nights, persistent worry about her financial future, and a pervasive sense of hopelessness that further exacerbates her physical symptoms and depression.[5]

---

[3] See Keeling v. T-H Pro. & Med. Collections, Ltd., No. 23-cv-2979, 2024 U.S. Dist. LEXIS 45711, at *7-10 (N.D. Ill. Mar. 14, 2024) (holding that a lower credit score, and the accompanying loss of credit opportunities, constitutes a concrete injury sufficient for Article III standing).
[4] See Walters v. Fast AC, LLC, 60 F.4th 642, 648–49 (11th Cir. 2023) (treating out-of-pocket costs, diminished credit opportunities, and anxiety-based emotional distress as concrete, particularized harms that satisfy Article III's injury-in-fact requirement).
[5] See Gerber v. Herskovitz, 14 F.4th 500, 505–06 (6th Cir. 2021) (holding that extreme emotional distress suffices to constitute a concrete injury supporting Article III standing). Contra; Pennell v. Global Trust Mgmt., 990 F.3d 1041, 1045 (7th Cir. 2021) (holding that "stress by itself with no physical manifestations and no qualified medical diagnosis" does not amount to a

132. The increased stress and anxiety Plaintiff has suffered because of the identity theft and Defendants' failure to remove the disputed fraudulent information has aggravated Plaintiff's symptoms and exacerbated her physical pain and depression.

133. At all times pertinent hereto, Defendants were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

134. At all times pertinent hereto, the conduct of Defendants, as well as that of their representative agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent and in utter disregard for federal law and the rights of Plaintiff herein.

135. CRA Defendants have a long history of disregarding the credit reporting rights of identity theft victims under the FCRA. For example, in the very similar matter of *April Hendrix vs. Equifax, et. al*., (N.CM.D. C.A. No. 1-16-cv-201), an identity theft victim sued several CRAs, including CRA Defendants, over their repeated wrongful removal of security freezes, release of her credit reports for impermissible purposes, and refusal to properly reinvestigate disputed identity theft information on her credit reports.

136. The *Hendrix* suit put the CRA Defendants on notice several years ago that their respective policies and procedures for implementing security freezes and handling identity theft victims' requests and disputes were woefully inadequate.

137. The CRA Defendants have had years of notice in the form of federal lawsuits, despite it all, the CRA Defendants did not take any better steps to protect the Plaintiff here.

---

concrete harm); *Brunett v. Convergent Outsourcing*, 982 F.3d 1067, 1068 (7th Cir. 2020) (mere "confusion" from a collection letter is not an injury); *Wadsworth v. Kross, Lieberman & Stone, P.C.*, 12 F.4th 665, 668 (7th Cir. 2021) (plaintiff alleged only conclusory "stress," no physical sequelae).

138.    The respective internal policies and procedures of the CRA Defendants do not appear to place any value on its obligations under the FCRA to report credit entries accurately, to reinvestigate carefully when notified of consumer disputes, and to avoid giving third parties access to consumers' reports without authorization or permissible purpose. Nor do the CRA Defendants' respective policies and procedures respect their statutory duties to enforce or at minimum add security freezes and fraud alerts as requested by the consumer.

139.    As a standard practice, the CRA Defendants do not conduct independent investigations in response to consumer disputes.  Instead, they merely parrot the response of the data furnishers, like Defendant EdFinancial here, despite numerous court decisions admonishing this practice.  See Cushman v. Trans Union Corp., 115 F.3d 220, 225 (3d Cir. 1997) (The 'grave responsibilit[y]' imposed by § 1681(a) must consist of something more than merely parroting information received from other sources.  Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); Apodaca v. Discover Fin. Servs., 417 F. Supp. 2d 1220, 1230-31 (D.N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is disputed); Gorman v. Experian Info. Sols., Inc., 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

140.    Each of the CRA Defendants are aware of the shortcomings of their respective procedures and intentionally choose not to comply with the FCRA to lower their costs. Accordingly, the Credit Bureau Defendants' violations of the FCRA are willful.

141.    Each of the CRA Defendants' policies and procedures clearly establish willfulness, wantonness, and utter and reckless disregard for the rights and interests of consumers and led directly to the injuries of Plaintiff as described in this amended complaint.

142.    As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of ability to purchase and benefit from credit; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove the student loan accounts that were the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove the open fraudulent student loan accounts that were the product of identity theft.

143.    Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted and questioned and disbelieved by the Defendants.

**COUNT I**
**15 U.S.C. § 1681e(b)**
**Failure to Follow Reasonable Procedures to**
**Assure Maximum Possible Accuracy**
**(First Claim for Relief Against Equifax, Experian, and Trans Union)**

144.    Plaintiff incorporates by reference all the above paragraphs of this Amended Complaint as though fully set forth herein.

145.    The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

146.    Despite actual and implied knowledge that Plaintiff was the victim of identity theft, the CRA Defendants readily and repeatedly sold such false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately, Plaintiff's creditworthiness by suggesting that Plaintiff had student loan accounts.

147.    Defendant Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or follow

reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

148.     Defendant Experian violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

149.     Defendant Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

150.     As a result of the CRA Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating, including, but not limited to, a decreased credit score; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove open fraudulent student loan accounts that were the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove  open fraudulent student loan accounts that were the product of identity theft.

151.     Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted and questioned and disbelieved by the Credit Bureau Defendants.

152.     Each of the CRA Defendants' conduct, actions, and inactions were willful, rendering Defendants Equifax, Experian, and Trans Union liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

In the alternative, the Credit Bureau Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

153.    Plaintiff is entitled to recover attorneys' fees and costs from the Credit Bureau Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT II**
**15 U.S.C. § 1681i**
**Failure to Perform a Reasonable Reinvestigation**
**(Second Claim for Relief Against Equifax, Experian, and Trans Union)**

154.    Plaintiff incorporates by reference all the above paragraphs of this Amended Complaint as though fully set forth herein at length.

155.    The FCRA mandates that a CRA conduct an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. See 15 U.S.C. § 1681i(a)(1).  The Act imposes a 30-day limitation for the completion of such an investigation. Id.

156.    The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file.  See 15 U.S.C. § 1681i(a)(5)(A).

157.    On or about January 24, 2025, Plaintiff disputed the inaccurate information with the CRA Defendants and requested that they correct and/or delete a specific item in her credit file that is patently inaccurate, misleading, and highly damaging to her, namely, the Fraudulent Accounts, that were the product of identity theft which was a very stressful situation for the Plaintiff.

158.    On at least one occasion, Plaintiff supported her dispute with a copy of the

complaint filed with the Consumer Fraud Bureau and a copy of the FTC ID Theft Report.

159.   Despite actual and implied knowledge that Plaintiff was the victim of identity theft, and in response to Plaintiff's disputes, Defendant Equifax conducted virtually no investigations of Plaintiff's disputes, or such investigations were so shoddy as to allow patently false and highly damaging information to remain in Plaintiff's credit file.

160.   Despite actual and implied knowledge that Plaintiff was the victim of identity theft, and in response to Plaintiff's disputes, Defendant Experian conducted virtually no investigations of Plaintiff's disputes, or such investigations were so shoddy as to allow patently false and highly damaging information to remain in Plaintiff's credit file.

161.   Despite actual and implied knowledge that Plaintiff was the victim of identity theft, and in response to Plaintiff's disputes, Defendant Trans Union conducted virtually no investigations of Plaintiff's disputes, or such investigations were so shoddy as to allow patently false and highly damaging information to remain in Plaintiff's credit file.

162.   Plaintiff expended resources in the form of time and money to dispute the Fraudulent Accounts with the CRA Defendants.

163.   The CRA Defendants' refusals to block the disputed Fraudulent Accounts provided credibility to those accounts, forcing an identity theft victim to be repeatedly confronted with the evidence of identity theft.

164.   Defendant Equifax violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which they received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in

Plaintiff's credit file.

165.    Defendant Experian violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which they received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

166.    Defendant Trans Union violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which they received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

167.    As a result of the CRA Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove open fraudulent student loan accounts that were the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove open fraudulent student loan accounts that were the product of identity theft.

168.    Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose

veracity is doubted and questioned and disbelieved by the CRA Defendants.

169.     Each of the CRA Defendants' conduct, actions, and inactions were willful, rendering the CRA Defendants liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, the Credit Bureau Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

170.     Plaintiff is entitled to recover attorneys' fees and costs from the Credit Bureau Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

### COUNT III
### 15 U.S.C. § 1681c-2
### Failure to Block Identity Theft Information
### (Third Claim for Relief Against Equifax, Experian and Trans Union)

171.     Plaintiff incorporates by reference all of the above paragraphs of this Amended Complaint as though fully set forth herein at length.

172.     Defendant Equifax violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file.

173.     Defendant Experian violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file.

174.     Defendant Trans Union violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file.

175.     Plaintiff submitted ample evidence of the fact that she was an identity theft victim. Plaintiff further supported the fact that she was an identity theft victim by providing to the CRA Defendants copies of the Police Report and FTC IDT Report.

176.     The CRA Defendants should have blocked the identity theft information but failed to do so at every turn.

177.     As a result of the CRA Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove open fraudulent student loan accounts that were the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove open fraudulent student loan accounts that were the product of identity theft.

178.     Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted and questioned and disbelieved by the CRA Defendants.

179.     Each of the CRA Defendants' conduct, actions, and inactions were willful, rendering the CRA Defendants liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, the CRA Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

180.     Plaintiff is entitled to recover attorneys' fees and costs from the CRA Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT IV
## 15 U.S.C. § 1681s-2b
## Failure to Conduct an Investigation of the Disputed Information and Review of all Relevant Information Provided by the Consumer
## (First Claim for Relief Against Defendant EdFinancial)

181.     Plaintiff incorporates by reference all the above paragraphs of this Amended

Complaint as though fully set forth herein at length.

182.    Defendant EdFinancial refused to remove information that was the product of identity theft—namely the Fraudulent Accounts.

183.    Defendant EdFinancial violated 15 U.S.C. § 1681s-2(b) by failing to investigate Plaintiff's dispute(s), or otherwise by failing to fully and properly investigate Plaintiff's dispute(s), including but not limited to failing to review all relevant information regarding the same.

184.    As a result of Defendant EdFinancial conduct, action, and inaction, Plaintiff suffered damage by loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove open fraudulent student loan accounts that were the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove open fraudulent student loan accounts that were the product of identity theft.

185.    Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted and questioned and disbelieved by Defendant EdFinancial.

186.    Defendant EdFinancial's conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, Defendant EdFinancial was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

187.    Plaintiff is entitled to recover attorneys' fees and costs from Defendant EdFinancial in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Honorable Court grant the

following relief against Defendants:

(a)     Declaratory judgment that Defendants violated the FCRA, 15 U.S.C. § 1681;

(b)     An award of actual, statutory, and punitive damages pursuant to 15 U.S.C. §§

        1681, et seq.;

(c)     An award of costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n

        and § 1681o; and,

(d)     Such other and further relief as this Honorable Court may deem just and proper,

        including any applicable pre-judgment and post-judgment interest, and/or

        declaratory relief.

## JURY DEMAND

Plaintiff hereby demands jury trial on all issues so triable.

Dated: June 20, 2025.

By: */s/ David Pinkhasov*
David Pinkhasov, IL # 592904
CONSUMER ATTORNEYS, PLLC
68-29 Main Street
Flushing NY 11367
T: (718) 701-4605
F: (718) 247-8020
E: dpinkhasov@consumerattorneys.com

*Attorney for Plaintiff*
*Julia Ruth Tarbill*

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on June 20, 2025, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notice of such filing to all attorneys of record in this matter. Since none of the attorneys of record are non-ECF participants, hard copies of the foregoing have not been provided via personal delivery or by postal mail.


By: *<u>/s/ Eugene Nowak</u>*